MONSERRATE QUIJANO y TELLADO, recurrente, *v.* EL REGISTRADOR de la PROPIEDAD de SAN GERMÁN, recurrido

No. 710.—*Sometido:* Marzo 2, 1928. *Resuelto:* Marzo 23, 1928.

1. NOTARIOS—ENMIENDAS O REFORMAS DE DOCUMENTOS—PODER PARA ELLO.—Un notario no tiene poder para, en ausencia de las partes otorgantes y sin el consentimiento de ellas, alterar, enmendar y reformar un documento notarial por virtud de un documento formal, cualquiera que sea su forma, y menos por uno en el cual él comparece en su capacidad individual, ante sí mismo como notario.

2. VENDEDOR Y COMPRADOR — REQUISITOS Y VALIDEZ DEL CONTRATO—CONTRATO CONSIGNADO EN ESCRITURA PÚBLICA—INSCRIPCIÓN—DEFECTOS INSUBSANABLES—EN GENERAL.—Cuando los hechos y circunstancias revelados por una escritura de compra-venta son suficientes de por sí para demostrar que lo que tuvieron en mente las partes que la otorgaron fué un traspaso o venta de uno a favor de su anterior y no de su segunda esposa, y que la substitución del nombre y apellido de la primera por la segunda esposa en la cláusula de venta es un error de pluma *(clerical error)* el mero hecho de que tal error de parte del que escribió el documento, no pueda ser corregido sin el consentimiento de las partes contratantes, no transforma un error que es claramente susceptible de ser corregido en un defecto insubsanable.

NOTA de *Luis Capó Matres,* R. (San Germán), denegando inscripción de una escritura de compraventa. *Revocada.*

*J. A. Surís Agrait,* abogado del recurrente; el registrador recurrido no compareció.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El registrador de la propiedad se negó a inscribir una escritura de enajenación por el fundamento de que el documento pretende ser un contrato de compraventa entre marido y mujer, y que un documento notarial posterior presentado en unión a la escritura es inadecuado para corregir el defecto.

Las partes mencionadas en el párrafo inicial de la escritura de enajenación son don Andrés Emilio Alvarez y Mercado y doña Monserrate Quijano y Tellado. Se describe a Alvarez como casado y se da el nombre de su esposa, doña Emilia Lugo. Doña Monserrate Quijano y Tellado, la parte de la segunda parte, es identificada como una mujer divorciada. El notario da fe de conocer personalmente a las partes.

Entonces, el vendedor Alvarez dice que es dueño de cierta finca descrita en la escritura e identificada como una parcela de terreno que le fué adjudicada a dicho Alvarez en la división de los bienes habidos al disolverse una sociedad de gananciales anterior existente entre Alvarez y su ex-esposa, la parte de la segunda parte, doña Monserrate Quijano y Tellado. A este respecto se hace también referencia a otra escritura de igual fecha, otorgada ante el mismo notario. La escritura de enajenación está suscrita por Alvarez, doña Monserrate Quijano y Tellado, los testigos y el notario. La segunda esposa, doña Emilia Lugo, no compareció ante el notario en carácter alguno, y nada hay en la escritura que indique que ella estuviera presente al tiempo del otorgamiento.

Sin embargo, la cláusula de venta empieza con la manifestación de que "don Andrés Emilio Alvarez y Mercado, vende, y doña Emilia Lugo compra, la finca anteriormente descrita. . ."

La escritura de enajenación fué entonces presentada en el registro de la propiedad, junta con lo que pretende ser

otro documento formal titulado: "Acta Aclaratoria." En este documento sumamente raro, el notario ante quien se otorgó la escritura original comparece en su capacidad individual, ante sí mismo como notario, y en forma de una declaración jurada narra los hechos y circunstancias relativos al otorgamiento de dicha escritura original, incluyendo la substitución inadvertida del nombre y apellido en la cláusula de venta. Entonces se trata de corregir el error, enmendando la cláusula en cuestión en el sentido de que la misma refleje la verdad.

[1, 2] Estamos muy de acuerdo con el registrador en que un notario no tiene poder para alterar, enmendar o reformar un documento notarial en ausencia de las partes otorgantes y sin el consentimiento de ellas. Para cualquier fin de esa naturaleza, e independientemente de cualquier cuestión de forma, el documento ulterior carecía por completo de valor. La mayoría de este tribunal es claramente de opinión que el escrito posterior en absoluto carece de valor para cualquier fin. La minoría, incluyendo al que suscribe, se inclina a sostener el criterio de que el escrito últimamente mencionado, a pesar de todos los defectos de forma y de la futilidad manifiesta del esfuerzo realizado para subsanar el defecto de referencia, tiene algún valor probatorio, por leve que fuere, como evidencia acumulativa. Sin embargo, nuestra decisión no depende de si la relación de los hechos por el notario, quien evidentemente tuvo la intención de hacer por medio de la misma una solemne declaración escrita bajo su firma y autenticada por su rúbrica y sello notarial, puede o no considerarse como que indica su modo de ver la transacción, y, hasta ese punto, como corroborativa de la evidencia intrínseca contenida en la escritura original de enajenación.

Los hechos y circunstancias revelados por la escritura original que arriba se bosquejan son suficientes de por sí para demostrar que lo que tuvieron en mente las partes que otorgaron el documento en cuestión fué un traspaso

por Andrés Emilio Alvarez a favor de su anterior esposa, doña Monserrate Quijano y Tellado, la parte de la segunda parte, y no a favor de la segunda esposa, doña Emilia Lugo; y que la substitución de nombre y .apellido en la cláusula de venta fué un error de pluma (*clerical error*). El mero hecho de que tal error de parte del que escribió el documento no pueda ser corregido sin el consentimiento formal de las partes contratantes no transforma un error que es claramente susceptible de ser corregido en un defecto insubsanable.

*Debe revocarse la nota recurrida.*